**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

HEALTH CARE SERVICE
CORPORATION, a Mutual Legal
Reserve Company,

Plaintiff,

v.

WALGREEN CO. & WALGREENS
BOOTS ALLIANCE, INC.,

Defendant / Third-Party Plaintiffs

v.

PRIME THERAPEUTICS LLC,

Third-Party Defendant.

Case No. 25-cv-15415

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Health Care Service Corporation ("HCSC") originally filed this action in the Circuit Court of Cook County, Illinois, alleging that Defendants Walgreen Co. and Walgreens Boots Alliance, Inc. (together, "Walgreens") fraudulently reported inflated prices for prescription drugs. [11-1] at A.1. Walgreens has since removed the action to this Court. [1].

Before the Court now is HCSC's motion to remand [26] the case back to the Circuit Court of Cook County. For the reasons stated herein, HCSC's motion [26] is granted.

### I. Background

HCSC insures or administers assorted health care plans that provide prescription drug coverage to plan members residing in Illinois and other states. [11-1] at A.1 ¶¶

1

3, 11. These health care plans include private commercial plans as well as Medicare Part D plans. [26] at 2–4; [33] at 1–2.

When plan members fill prescriptions covered by these plans at a Walgreens pharmacy, Walgreens submits electronic claims to HCSC—through HCSC's pharmacy benefit manager, Prime Therapeutics LLC ("Prime")—for reimbursement. [11-1] at A.1 ¶¶ 3, 20, 29, 31. When submitting reimbursement claims, Walgreens reports the usual and customary ("U&C") price for the drug it dispensed to the member. *Id.* ¶¶ 3, 31. HCSC contends that the U&C price functions as a reimbursement ceiling. *Id.* Specifically, if Walgreens' reported U&C price for a particular drug is greater than the parties' other negotiated prices for that drug, HCSC will pay Walgreens the negotiated price. *Id.* ¶ 31. If, on the other hand, Walgreens' reported U&C price for a particular drug is less than the parties' other negotiated prices for that drug, HCSC will pay Walgreens the reported U&C price. *Id.*

HCSC maintains that the U&C price is defined as the price customers without insurance pay for the particular prescription drug, *i.e.*, the cash or uninsured price. *Id.* ¶ 34. According to HCSC, the prescription drug industry has understood this definition of U&C for decades. *Id.* And when combined with the "lessor of" reimbursement methodology above, HCSC contends that this means that it will not reimburse Walgreens more for a drug than what Walgreens charges cash-paying customers paying without insurance for that same drug. *Id.* ¶¶ 1, 3.

2

Despite this definition, HCSC claims that Walgreens submitted U&C prices that were regularly higher than what Walgreens was actually charging cash-paying and uninsured customers, resulting in artificially inflated U&C prices. *Id*. ¶ 7. By fraudulently submitting inflated U&C prices on millions of claims to be processed by HCSC, HCSC maintains that Walgreens was able to obtain inflated reimbursements from HCSC for those prescription drugs. *Id*. ¶ 1.

HCSC filed its Complaint against Walgreens on January 19, 2021 in the Circuit Court of Cook County, Illinois. [11-1] at A.1. The Complaint alleges five causes of action: (1) fraud, (2) fraudulent nondisclosure, (3) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510, *et seq*., (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq*., and (5) unjust enrichment. *Id*. ¶¶ 82–141. HCSC seeks "to recover at least the amount that Walgreens wrongly obtained from Plaintiff through inflated reimbursement claims where Walgreens' claims were paid based on Walgreens' reported U&C prices that were higher than the true U&C price offered to Walgreens' customers who paid without using insurance." *Id*. at p. 39.

Following motion practice on the pleadings, *see e.g*., [11-1] at A.6, HCSC and Walgreens proceeded to engage in fact and expert discovery. *See e.g.* [29] ¶¶ 24–30. Relevant here, at some point in the case, HCSC retained Michael J. Petron ("Mr. Petron") as its damages expert and Walgreens retained Jed Smith ("Mr. Smith") as its damages expert to rebut Mr. Petron's damages analysis.

3

Mr. Petron submitted his expert report on August 1, 2025. [36-4]. On September 17, 2025, Walgreens sent a Rule 204(A)(1) subpoena to Mr. Petron. [29] ¶ 29. The subpoena requested Mr. Petron's deposition as well as tables containing the specific claims that supported Mr. Petron's damages analysis. [57][1]. On October 8, 2025, HCSC provided Walgreens with the requested tables. [27-17]. The tables included, among other things, Medicare Part D claims. [29] ¶ 30; [57].

On October 14, 2025, Walgreens served amended responses to HCSC's Rule 213(f)(2) and (3) Interrogatories. [29-3]. In those responses, Walgreens disclosed that Mr. Smith would, among other things, opine on how Mr. Petron's analysis failed to account for Medicare Part D subsidies. *Id.* at 11. On December 5, 2025, Mr. Smith submitted an expert report containing that opinion. [29-4] at 20–23.

On December 17, 2025, Walgreens deposed HCSC's regulatory expert, Dr. Adam Block ("Dr. Block"). [1] ¶ 3. During Dr. Block's deposition, the following colloquy occurred:

> Q: You recognize, though, that any reimbursement claims that Walgreens submitted to federally insured plans are not at issue in this litigation, right.
> A: Yes.
>
> Q: And you recognize that HCSC is not trying to recover damages for reimbursement claims that Walgreens submitted to federally insured plans?
> A: Yes.
>
> Q: What is that understanding based upon?

---

[1]On May 8, 2026, the parties provided the Court with the data files, tables, transaction data, and subpoena referenced in paragraphs 29 and 30 of the Declaration of Michael H. Pine. [29] ¶¶ 29, 30.

> A: It's based upon the nature of this case being a case between two private entities.

[11-3] at 44:18–45:5

Following this colloquy, counsel for HCSC objected to the line of questioning and explained to counsel for Walgreens that HCSC was, in fact, seeking to recover damages based on reimbursement claims that Walgreens submitted for Medicare Part D plans administered by HCSC. *Id.* at 45:12–46:21. Dr. Block then corrected his testimony based on the objection raised by HCSC's counsel. *Id.* at 46:23–48:7.

The next day, December 18, 2025, Walgreens removed HCSC's action to this Court, asserting federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441(c). [1] ¶ 22. Walgreens contends that, because HCSC seeks claims for damages related to Medicare Part D plans, federal question jurisdiction exists because (1) "in substance, [HCSC] is bringing a claim under federal law"; (2) HCSC's claims are "founded upon" and "inextricably intertwined" with the Medicare Act and other federal statutes; and (3) HCSC's action "is completely preempted by the Medicare Act." *Id.* ¶¶ 23, 26, 31. Walgreens maintains that its removal was timely because the first clear indication that HCSC intended to recover damages related to Medicare Part D plans administered by HCSC was during Dr. Block's December 17, 2025 deposition. *Id.* ¶¶ 34–37.

On January 20, 2026, HCSC moved to remand this action back to the Circuit Court of Cook County. [26].

## II. Legal Standard

5

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States." 28 U.S.C. § 1441(a). A notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b)(1). Where it is not apparent from the complaint that the case is removable, a notice of removal may be filed "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). "The short removal time limit forces the defendant to make a prompt decision about removal once a pleading or other litigation document provides clear notice that the predicates for removal are present." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 823 (7th Cir. 2013).

### III.  Analysis

HCSC raises two arguments in support of remand. The first is that Walgreens does not provide a valid basis for federal jurisdiction. [26] at 5–6. The second is that Walgreens' removal is untimely. *Id.* As it is dispositive, the Court focuses its discussion on the timeliness of Walgreens' removal.

The parties agree that, under Walgreens' theory of federal question jurisdiction, the triggering event for when the 30-day removal clock started is when Walgreens was first put on notice that HCSC intended to recoup reimbursements for Medicare

6

Part D claims. [26] at 13; [33] at 15. Walgreens removed this action on December 18, 2025. [1]. As such, if Walgreens was on notice that HCSC intended to recover Medicare Part D damages before November 18, 2025, removal was untimely. If not, removal was timely.

HCSC contends the clock started on January 19, 2021, the date the Complaint was filed. [26] at 13–15. It maintains the Complaint plainly seeks to recover damages for *all* reimbursement claims submitted by Walgreens, which would encompass Medicare Part D claims. *Id.* Walgreens, on the other hand, argues that the allegations in the Complaint are too vague and generic to affirmatively and unambiguously reveal that HCSC specifically intended to recoup reimbursements for Medicare Part D claims. [33] at 15–16.

At base, the debate between HCSC and Walgreens turns on the degree of responsibility a defendant bears when determining the timeliness of removal under 28 U.S.C. § 1446(b). On one hand, a defendant is not required to "engage in guesswork about a plaintiff's legal theory or exhaustively scrutinize ambiguous pleadings to discern whether the plaintiff is trying to obscure a basis for federal jurisdiction." *Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234, 240 (7th Cir. 2021). As such, if a complaint does not "affirmatively and unambiguously" reveal that the predicates for removal are present, the 30-day removal clock does not start to run. *Id.* at 239 (citing *Walker*, 727 F.3d at 824). On the other hand, "a defendant cannot bury its head in the sand or feign ignorance about information within its control." *Id.* In other words, "[i]f removability turns on information about the defendant that the defendant itself

7

knows or can readily ascertain, the 30-day clock in § 1446(b)(1) begins to run." *Id.*; *see also id.* ("when it comes to removal, a defendant can be held to information about its own operations that it knows or can discern with ease.").

The spectrum between these competing principles is hazy. But, on balance, the Court finds the latter more apt here. The Complaint makes it apparent that damages stemming from all claims that Walgreens submitted to Prime for reimbursement by HCSC, without limitation, are at issue in this action. *See e.g.*, [11-1] at A.1 ¶ 32 (alleging fraudulent misrepresentation for "each and every claim submitted by Walgreens to Prime"); *id.* ¶ 41 (alleging that Walgreens was required to report accurate U&C prices for "all claims submitted to [HCSC] through [Prime]"); *see also id.* ¶¶ 30, 31, 60, 62, 71–73, 76, 83, 86, 96, 126. The evidence also shows that, at any point in time, all reimbursement claims that Walgreens submitted to Prime were governed by a single contract that encompassed Medicare Part D plans. [11-1] at A.8 ¶¶ 7, 42, 51; *id.* at A.8, Exs. 002, 003 (governing the provision of "Prescription Drug Services" to "Covered Persons," which is defined to include "a person … enrolled in or covered by a Benefit Plan ... and includes a Subscriber under Medicare Programs.")[2]. So, when the Complaint put all reimbursement claims that Walgreens submitted to

---

[2]Walgreens signed two contracts with Prime: a 2008 contract and a 2018 contract. [11-1] at A.8 ¶ 51. The 2008 contract covers claims submitted through December 31, 2017, while the 2018 contract covers claims submitted on and after January 1, 2018. *Id.* While HCSC represents that the scope of the 2008 and 2018 contracts is consistent with respect to Medicare Part D coverage, [41] at n.4, the Court is unable to confirm this as the parties have not provided the 2018 contract. However, because the Complaint alleges damages back to 2007, [11-1] at A.1 ¶ 60, Walgreens' relationship with Prime pursuant to the 2008 contract is implicated.

Prime at issue, Walgreens, by simply reviewing its governing contract with Prime, could have recognized that damages related to Medicare Part D claims would be implicated. This means that the 30-day removal clock started when HCSC filed its Complaint on January 19, 2021. And because Walgreens did not remove the action until nearly five years later, its removal is untimely.

Even if, however, the removal clock didn't start on January 19, 2021, it certainly would have started on at least October 8, 2025, the date that HCSC provided Walgreens with tables containing the specific claims that supported Mr. Petron's damages analysis. [27-17]. The Court has reviewed those tables and agrees with HCSC that they plainly contain Medicare Part D claims, as identified by the "LOB" (Line of Business) field containing a value reflecting either "Commercial", "Medicaid", "Medicare Part B", or "Medicare Part D." [29] ¶ 30; [57].

Walgreens nevertheless maintains that the tables were not enough to start the 30-clock because they contain of "hundreds of millions of lines of data," leaving it still unclear whether HCSC intended to recover damages on Medicare Part D claims. [33] at 18. But Walgreens' own filings belie this position. Walgreens' interrogatory responses on October 14, 2025 [29-3] and Mr. Smith's expert report dated December 5, 2025 [29-4] both[3] recognize that damages related to Medicare Part D were included

---

[3]In a footnote, Walgreens argues that these materials are "statements by Walgreens, not HCSC" and are thus irrelevant to the removal inquiry. [33] at n. 15. Though Walgreens is correct its own litigation documents cannot qualify as "other paper" sufficient to trigger the 30-day removal clock, *Walker*, 727 F.3d at 823–24, these materials are still relevant to show that the October 8, 2025 disclosures were, in fact, objectively clear enough to indicate that Medicare Part D damages were at issue.

as part of Mr. Petron's analysis. If the October 8, 2025 disclosures were clear enough to generate such a substantive rebuttal by Walgreens, the notion that they nevertheless failed to "affirmatively and unambiguously" reveal that HCSC intended to pursue Medicare Part D damages is difficult to credit. *Railey*, 16 F.4th at 239. So, even if the clock didn't start on January 19, 2021, it started on October 8, 2025. Walgreens' December 18, 2025 removal date would still remain outside the 30-day window.

## IV.    Conclusion

For the stated reasons, HCSC's motion to remand [26] is granted. Walgreens' motion for oral argument [45] is denied as moot. Exercising its discretion, *Wahl v. Ravenswood Hosp. Med. Ctr.*, No. 93 C 1362, 1993 WL 311733, at *1 (N.D. Ill. Aug. 11, 1993), the Court declines to award HCSC fees and expenses pursuant to 28 U.S.C § 1447(C). The Clerk of the Court is directed to remand this case forthwith to the Circuit Court of Cook County, Illinois. Civil case terminated.

Dated: June 2, 2026                          E N T E R:

_____

MARY M. ROWLAND

United States District Judge

10